IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANISHA B,

        Plaintiff,

v.

FRANK BISIGNANO,
*Commissioner of Social Security,*

        Defendant.

1:25CV907

## ORDER AND MEMORANDUM OPINION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Danisha B. ("Danisha") brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for social security disability insurance benefits and a period of disability.[1] The Court has considered the certified administrative record and dispositive briefing from the parties. Because substantial evidence supports the determination of the Administrative Law Judge ("ALJ"), the Court will deny Danisha's request for remand or the award of benefits, as set forth below.

### I.  PROCEDURAL HISTORY

Danisha filed an application for disability insurance benefits and a period of disability in January of 2023, alleging a disability onset date of April 23, 2022.  (Tr. 167-70.) The applications were denied initially and upon reconsideration. (Tr. 80-83, 96-98.) After a hearing, the ALJ determined on August 27, 2024 that Danisha was not disabled under the Act.  (Tr. 17-58.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for review.  (Tr. 1-6.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 4.  By Order of Reference, this matter was referred to the

Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c).  Docket Entry 10.

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is **limited** to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Danisha is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 404.1520, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470,

472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

In this case, the ALJ determined at step one that Danisha had not engaged in substantial gainful activity since the alleged onset date of April 23, 2022. (Tr. 19.) The ALJ next found the following severe impairments at step two: DeQuervains tenosynovitis; obesity; radial neuropathy; and degenerative disc disease. (Tr. 20.) At step three,

2

the ALJ found that Danisha did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 20.)

The ALJ next set forth Danisha's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of light work

> except that she can sit, stand and walk up to six hours each. She can frequently reach, handle, finger and feel bilaterally. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can frequently use ramps and stairs, balance, bend, stoop, kneel and crouch. She can have no exposure to workplace hazards including dangerous machinery and unprotected heights.

(Tr. 21.) At the fourth step, the ALJ determined that Danisha was unable to perform her past relevant work. (Tr. 27.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that she could perform. (Tr. 27.)

## IV. DISCUSSION

In her appeal, Danisha asserts only that "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of [her] ability to handle and finger with [her] dominant [right upper extremity] when formulating the RFC and did not apply the correct legal standards."

Docket Entry 11 at 5. In support, Danisha emphasizes vocational expert testimony providing that if an individual with her RFC were limited to no more than occasional (rather than frequent) use of the dominant upper extremity, she would be unable to perform any light or sedentary jobs. Docket Entry 11 at 5 citing Tr. 53. As demonstrated below, this objection fails.

### A. The RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines*, 453 F.3d at 562. The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC assessment must include a narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting

*Monroe*, 826 F.3d at 189). Failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "[f]irst, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 404.1529(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those

4

subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

(i) [Plaintiff's] Daily Activities;

(ii) The Location, Duration, Frequency, and Intensity of [Plaintiff's] Pain or Other Symptoms;

(iii) Precipitating and Aggravating Factors;

(iv) The Type, Dosage, Effectiveness, and Side Effects of Any Medication [Plaintiff] Take[S] or [Has] Taken to Alleviate His Pain or Other Symptoms;

(v) Treatment, Other than Medication, [Plaintiff] Receive[S] or [Has] Received for Relief of His Pain or Other Symptoms;

(vi) Any Measures [Plaintiff] Use[S] or [Has] Used to Relieve His Pain or Other Symptoms (*E.G.*, Lying Flat on [Her] Back, Standing for 15 to 20 Minutes Every Hour, Sleeping on a Board, Etc.); and

(vii) Other Factors Concerning [Plaintiff's] Functional Limitations and Restrictions Due to Pain or Other Symptoms.

20 C.F.R. § 404.1529(c)(3).

B. The ALJ's Function-By-Function Assessment Was Well-Supported and the ALJ Applied the Proper Legal Standards.

Here, as shown below, the ALJ sufficiently explained why the overall record supported the RFC findings. That is, the ALJ plainly performed a thorough function-by-function analysis (particularly as to Danisha's right upper extremity) that used the proper legal standards and logically connected substantial evidence to the RFC limitations. (Tr. 21-26.)

First, the ALJ discussed the findings of the non-examining state agency consultants, specifically noting the limitations found regarding Danisha's handling and fingering with the right hand. (Tr. 24, 59-64). At the initial level review, the non-examining state agency consultants determined that Danisha was capable of a range of medium work with limitations as to handling and fingering, specifically explaining: "[frequent but not continuous] fine/gross manipulation [right] hand/wrist." (Tr. 62.) The ALJ explained that he was only partially persuaded by the findings (and unpersuaded by the limitation to medium exertion work) and noted specifically that the record did not contain any findings of reduced grip strength in Danisha's right hand. (Tr. 24.) Nevertheless, the ALJ did not stop here but further noted that Danisha had some reports of tenderness to palpation and had sought ongoing treatment for pain in the upper right extremity. (Tr. 24, 63, 696.) Ultimately, in conjunction with

Danisha's cervical spine impairment and obesity, the ALJ determined that she should be limited to light rather than medium exertional work. (Tr. 24.) In this regard, the ALJ explained that he had found greater limitations in Danisha's ability "to perform manipulative activities and to work around hazards." (Tr. 24.)

At the reconsideration review level, the non-examining state agency consultants determined, consistent with the ultimate RFC finding, that Danisha should be limited to light rather than medium work and also determined that she should be limited to "frequent but not continuous fine/gross manipulation" with the right hand and wrist.[2] (Tr. 67-74.) The ALJ's reliance on the findings of the state agency consultants provides substantial evidentiary support for his finding that Danisha could frequently handle and finger with her right hand. *See, e.g., Wanda Sineath v. Colvin*, No. 1:16CV28, 2016 WL 4224051 (M.D.N.C. Aug. 9, 2016) ("These function by function assessments, that the ALJ gave great weight, provide support for the ALJ's RFC determination and allow the Court to conduct a meaningful review of the ALJ's analysis") (collecting cases).

Second, the ALJ discussed the treating source opinion of Kevin R. Kuzma, M.D., which he found partially persuasive. (Tr. 24-25, 609-

10.) The ALJ first explained that Dr. Kuzma had direct knowledge of Danisha's severe impairments and treatment history. (Tr. 24.) However, the ALJ found the opinion, which limited Danisha to only occasional handling and fingering with the right hand, to be inconsistent with other evidence of record. (Tr. 24.) In particular, the ALJ explained that the opinion appeared to be based, at least in part, on Danisha's subjective allegations regarding pain in the right upper extremity and alleged overuse of the left upper extremity. (Tr. 24, 609 ("Patient reports pain in right wrist that limits her functional use of the right hand in daily activities. She notes pain in left hand/wrist due to increased use").) *See Bishop v. Comm'r of Soc. Sec'y*, 583 F. App'x 65, 67 (4th Cir. 2014) (unpublished) (affirming ALJ decision to reject medical opinion that "appeared to mirror . . . subjective statements" and contrasted relatively "mild to moderate" findings reflected in treatment notes); *Craig*, 76 F.3d at 590 (affirming ALJ decision to reject medical opinion evidence based on subjective symptoms unsupported by treatment notes).

Furthermore, the ALJ explained that the objective signs and symptoms during Danisha's examinations were not consistent with the degrees of severity alleged. (Tr. 24.) For example, Dr. Kuzman cited the

---

[2] In the regulations, "[o]ccasionally" is defined as up to 1/3 of a workday, while "frequently" is defined as 1/3 to 2/3 of a workday. SSR 83-10, 1983 WL 31251, at

*5-6.

inability to perform fine and gross movements effectively, "e.g. inability to prepare a simple meal and feed oneself, inability to take care of personal hygiene, inability to sort and handle papers or files, or inability to place files in a file cabinet at or above waist level" (Tr. 609); however, the findings of other examinations, such as the examination from July 2023 in which Dr. Kuzma noted, with respect to the right upper extremity, contradicted this: "Intact to light touch sensation and capillary refill in the fingertips. There is good soft tissue turgor in the fingertips. She can flex and extend the IP joint of the thumb and can cross her fingers. No wounds. No swelling, erythema, or ecchymosis." (Tr. 24-25, 526.)

Subsequent notes showed further inconsistencies with Dr. Kuzma's statements: "There is a chevron incision over the first dorsal extensor compartment that has healed with minimal hypertrophy. Sensation is intact to light touch in the ulnar nerve distribution, but it is decreased in the superficial radial and median nerve distributions. Full active range of motion with wrist flexion, extension, pronation, and supination. Mild tenderness to palpation at the dorsal distal radius. (Tr. 25, 523, 696.) The ALJ noted this evidence of some decreased sensation, but Danisha retained full range of motion and expressed only tenderness to palpation. (Tr. 25, 523, 696.) Accordingly, the ALJ found such findings inconsistent with the level of pain and dysfunction alleged by

Danisha and inconsistent with the degree of limitation noted by Dr. Kuzma. (Tr. 25.)

Beyond this, a later examination in January 2024 showed the same general, mild findings as found in July 2023 cited above. (Tr. 704-05.) The ALJ also acknowledged that, during 2023, Danisha was diagnosed with degenerative disc disease of the cervical spine which was noted to be a possible source of some of her pain, but those findings were relatively mild as well. (Tr. 25, 501 ("She visited with a[n] outside physician who suggested that the pain could be related to an issue in her neck.").)

Treatment records from March 2024 also noted several findings inconsistent with Danisha's allegations and Dr. Kuzma's characterization of her limitations. (Tr. 26, 709-12.) For example, those records noted, among other things, that Danisha had no more than mild degenerative changes in her cervical spine and her motor function of the upper extremities was 5/5 in all assessed areas. (Tr. 711.) As the ALJ explained, this was in contrast to the level of weakness and pain Danisha alleged. (Tr. 26.)

However, the ALJ did not find Danisha completely functional in the right upper right extremity (*i.e.*, able to constantly use it). Instead, the ALJ explicitly acknowledged that there was objective evidence of severe impairments, including evidence that Danisha required surgical intervention on the right wrist and

7

thumb. (Tr. 25-26, 359.) However, the ALJ also accurately noted that Danisha recovered appropriately and attained good flexion, extension, strength and healed within twelve months of surgery. (Tr. 26, 696.)

The ALJ continued by explaining that he did, indeed, consider Danisha's subjective complaints of pain, but the severity of the complaints, in the context of the entire record, did not support a limitation greater than frequent handling and fingering. (Tr. 26.) In support of a handling and fingering limitation, the ALJ again pointed to treatment records which noted consistent complaints of difficulty gripping with the right hand as well as hand and wrist pain. (Tr. 491-588, 615-705.) Danisha specifically endorsed difficulty gripping small items, pinching, pushing, pulling, and difficulty with a broad range of activities with the right hand, including some pain and fatigue in the left hand and wrist which were attributed to overuse. (Tr. 26, 685.)

Danisha also alleged difficulty performing basic activities of daily living such as dressing, bathing, wiping and other relatively simple tasks. (Tr. 26, 43.) However, the more recent objective evidence from March 2024, noted above, included extensive objective testing which did not support the degree of severity alleged, including intact sensory examinations and 5/5 strength in all assessed motor functions of the right and left hands. (Tr. 26, 709-12.) Accordingly, in consideration of Danisha's complaints in relation to the record evidence, the ALJ provided "substantial reductions in the overall exertional level, manipulative level and postural maneuvers" for Danisha. (Tr. 25.) This analysis adequately evaluated Danisha's hand functionality.[3]

Danisha's arguments to the contrary are unpersuasive. As a general matter, Danisha ignores the fact that the ALJ discussed her functionality in detail, properly evaluated the medical opinion of Dr. Kuzma, and partially

remanded the matter because the ALJ never performed a functional assessment regarding Dowling's ability to sit and in fact "barely mentioned" her sitting problems at all. *Id.* at 388. Here, in contrast, no analogous set of facts exists. The ALJ addressed Danisha's right upper extremity limitations directly and thoroughly explained why they were not disabling in light of all of the evidence, including (but not limited to) the treatment record, the medical opinions, and the findings upon examination.

---

[3] Danisha cites a Fourth Circuit case, Docket Entry 11 at 10, *Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377 (4th Cir 2021), in which the claimant, Dowling, had an anal fissure that made sitting painful, yet the ALJ's disability finding turned on her ability to sit. *Id.* at 388. The ALJ concluded that Dowling was not disabled based upon a finding that she could perform sedentary (primarily sitting) work activities. *Id.* Dowling's ability to sit, therefore, was both contested and "critically relevant to determining her disability status." *Id.* at 389. The Fourth Circuit consequently

relied on the findings of the non-examining state agency consultants who also determined that she could frequently (rather than only occasionally or never) handle and finger with her right upper extremity. Docket Entry 11 at 5-13.

Beyond this, Danisha more specifically asserts that the ALJ erred by relying "upon relatively normal range of motion findings to counter [her] complaints of pain and . . . the [otherwise] favorable objective evidence." Docket Entry 11 at 14. She further contends that "the ALJ essentially [and improperly] required objective evidence to verify [her] subjective statements regarding her pain [ ] by discrediting her subjective pain based on normal range of motion testing[.]" *Id.* at 12. However, for the following reasons, these objections are unpersuasive.

First, if Danisha intends her assertion that she could "'rely exclusively on subjective evidence in proving that her symptoms . . . prevented her from working" (*id.* at 11-12 (brackets and ellipsis omitted) (quoting *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023)) to mean that the ALJ erred by considering objective medical evidence *at all* in analyzing the intensity, persistence, and limiting effects of her symptoms, such an argument lacks merit.

The Fourth Circuit has "reiterate[d] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). However, long-standing cases containing the substance of that holding, such as *Craig* and *Hines* (among others), clarify that, "[a]lthough a claimant's allegations about her pain may not be discredited *solely* because they are not substantiated by *objective evidence of the pain itself or its severity*, they need not be accepted to the extent they are inconsistent with the available evidence, including *objective evidence of the underlying impairment*, and the *extent to which that impairment can reasonably be expected to cause the pain* the claimant alleges she suffers." *Craig*, 76 F.3d at 595 (emphasis added); *see also Hines*, 453 F.3d at 565, n.3 (quoting *Craig*, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ *may* choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms. However, *Oakes*, *Arakas*, *Craig*, and *Hines* do not compel ALJs to consider *only* subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. *See* 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or

9

laboratory techniques (for example, deteriorating nerve or muscle tissue) *must* be considered in reaching a conclusion as to whether [an] individual is under a disability.") (emphasis added); *see also* 20 C.F.R. § 404.1529(c) (directing ALJs to consider a claimant's medical history, *medical signs and laboratory findings*, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions, in assessing intensity of a claimant's symptoms).[4]

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that he had carefully considered the evidence and found that Danisha's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 22.) The

ALJ therefore discharged his duty under the first step of the *Craig* analysis. Second, at step two of the *Craig* analysis, the ALJ decided that Danisha's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22.) The ALJ then set forth a number of reasons for partially discounting her assertions.

In other words, in compliance with *Oakes*, *Arakas*, *Hines*, *Craig*, and the applicable regulations, the ALJ considered the objective medical evidence as one part of his evaluation of the intensity, persistence, and limiting effects of Danisha's alleged pain. The ALJ also considered other record evidence, such as treatment

---

[4] Courts, including this one, have long maintained a distinction between a lack of objective medical evidence and inconsistency with the objective medical evidence. *See Chavis v. Colvin*, No. 1:11CV771, 2013 WL 7853486, at *9 (M.D.N.C. Mar. 4, 2013) ("[A]ny argument that the ALJ rejected her complaints of pain solely because of a lack of objective medical evidence must also fail. . . . [T]he ALJ did not discount Plaintiff's complaints of pain *solely* because of a lack of objective medical evidence. Rather, one reason the ALJ discounted Plaintiff's complaints in part was because the medical evidence of record *contradicted* Plaintiff's allegations"); *Robles De Nunez v. Comm'r of Soc. Sec.*, No. 1:21-CV-00618-SAB, 2023 WL 2839741, at *17 (E.D. Cal. Apr. 7, 2023) ("The distinction between

medical evidence simply failing to support a plaintiff's testimony and medical evidence being inconsistent is critical because the latter may qualify as a . . . reason to reject a plaintiff's testimony while the former does not.") (citation omitted); *see also Craig*, 76 F.3d at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, *they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment*, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers") (emphasis added).

used to alleviate pain (*see* Tr. 22-24 (discussing physical therapy, injections, a first surgery pursued and a second one not pursued), the opinion evidence of record (*see* Tr. 24-26 (discussing opinions of non-examining state agency physicians and Dr. Kuzma), allegations involving daily activities (Tr. 22-23 (discussing and ultimately discounting allegations of extremely limited daily activities), and claimant testimony (Tr. 22-23) (discussing claimant's admission that she could lift up to eight pounds). Consequently, this is not a case where an ALJ failed to consider the relevant factors in a subjective complaints analysis and instead only focused on the objective medical evidence or its absence. Instead, here, the ALJ followed the governing law and the correct legal standard in a manner supported by substantial evidence and susceptible to judicial review.

Second, any attempt to analogize the facts of this case to those present in *Arakas* falls short. *See* Docket Entry 11 at 12. In that case, the Fourth Circuit deemed fibromyalgia a "unique" disease, *Arakas*, 983 F.3d at 97, with "symptoms [that] are *entirely subjective*." *Id.* at 96 (emphasis added). The Fourth Circuit noted that "physical examinations of patients with fibromyalgia will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Id.* (brackets omitted). The Fourth Circuit thus held that "ALJs may not rely on

objective medical evidence (or the lack thereof) – even as just one of multiple factors – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia," because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Id.* at 97.

Approximately four years later, the Fourth Circuit extended that holding in *Arakas* to major depressive disorder ("MDD"). *See Shelley C. v. Commissioner of Soc. Sec.*, 61 F.4th 341, 361-62 (4th Cir. 2023) ("[S]ymptoms of MDD, like those of fibromyalgia, are '*entirely subjective*,' determined on a case-by-case basis.") (emphasis in *Shelley C.*) (quoting *Arakas*, 983 F.3d at 96). Notably, the Fourth Circuit has not extended the holding in *Arakas* to pain arising from Danisha's severe impairments (DeQuervains tenosynovitis, obesity, radial neuropathy, and degenerative disc disease), and she fails to explain how those conditions qualify as "disease[s] that do[ ] not produce [objective] evidence." *Arakas*, 983 F.3d at 97. *See* Docket Entry 11.

Third, Danisha's reliance on *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) is also misplaced. Docket Entry 11 at 11-12. In that case, the court remanded because the ALJ did not include *any* symptom analysis. *Oakes*, 70 F.4th at 215 ("[t]he ALJ baldly stated that 'the claimant's

subjective complaints and alleged limitations were not persuasive'"). Here, the ALJ made no such sweeping statements devoid of further analysis. Rather, the ALJ analyzed Danisha's symptoms in light of the entire recording including, for example, the objective medical evidence, treatment history, and prior administrative medical findings. (Tr. 22-26.) Therefore, *Oakes* is factually distinct.

Finally, the ALJ did not completely reject all of Danisha's subjective complaints. Rather, the ALJ concluded that Danisha's symptom allegations, including those of disabling pain, should in fact be largely credited and only partially discounted. Consequently, the ALJ limited her to a reduced range of light work with postural, manipulative, and environmental limitations. (Tr. 21.) While Danisha disagrees and points to evidence that the ALJ already considered to argue for greater limitations, this does not mean that the ALJ's decision was erroneous or that Danisha can ask this Court to reweigh the evidence to arrive at a different conclusion.

In the end, the Court "must sustain the ALJ's decision, even if [it] disagree[s] with it, provided the determination is supported by substantial evidence. . . . The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Likewise, "[t]he substantial evidence standard presupposes . . . a zone of choice within which the decisionmakers can

go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (unpublished) (citation omitted). The ALJ's decision here is legally correct, supported by substantial evidence, and susceptible to judicial review. For all these reasons, Danisha's objection is without merit.

V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

JoAnna Gibson McFadden
United States Magistrate Judge

July 16, 2026
Durham, NC

12